UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES B.,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:20-CV-01075 EAW

## INTRODUCTION

Represented by counsel, Plaintiff James B. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 13), and Plaintiff's reply (Dkt. 15). For the reasons discussed below, the Commissioner's motion (Dkt. 13) is granted and Plaintiff's motion (Dkt. 11) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on May 25, 2017. (Dkt. 10 at 19, 138-39).[1] In his application, Plaintiff alleged disability beginning February 28, 2017, due

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

to the following limitations: benign neoplasm of the cerebral meninges brain tumor, arteriovenous malformation of cerebral vessels, tinnitus, high blood pressure, Gastroesophageal reflux disease ("GERD"), headaches, and blurred vision in right eye. (*Id.* at 19, 155). Plaintiff's application was initially denied on August 17, 2017. (*Id.* at 19, 75-80). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Paul Georger in Buffalo, New York, on March 27, 2019. (*Id.* at 19, 35-64). On June 5, 2019, the ALJ issued an unfavorable decision. (*Id.* at 19-30). Plaintiff requested Appeals Council review; his request was denied on June 26, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

- 2 -

omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity

("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act through December 31, 2022. (Dkt. 10 at 21).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since February 28, 2017.  (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: benign brain tumor, migraine headaches and bilateral recurrent hernias, status/post surgical repair.  (*Id*.).  The ALJ further found that Plaintiff's medically determinable impairments

- 4 -

of GERD, tinnitus, hypertension, a crush fraction to the right fifth finger, fracture of fifth

right toe, presbyopia, and benign prostatic hyperplasia were non-severe.  (*Id*. at 22).

At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of any Listing.  (*Id*.

at 23).  The ALJ particularly considered the criteria of Listings 11.05, 11.00, and 5.00 in

reaching his conclusion.  (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC

to perform a full range of work at all exertional levels except:

> he would [be] limited to occasional exposure to unprotected heights and
> moving mechanical parts; and he would be limited to occasional operation
> of a motor vehicle.

(*Id.*).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant

work.  (*Id.* at 28).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to

conclude that, considering Plaintiff's age, education, work experience, and RFC, there

were jobs that exist in significant numbers in the national economy that Plaintiff could

perform, including the representative occupations of industrial cleaner, hand packager, and

laundry worker.  (*Id.* at 29).  Accordingly, the ALJ found that Plaintiff was not disabled as

defined in the Act.  (*Id.* at 30).

## II.    The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the

ALJ: (1) failed to properly consider and explain evidence, opinions, and testimony and

erred in resolving ambiguities in medical opinions without re-contacting treating sources

for clarification; and (2) failed to properly assess Plaintiff's credibility.  (Dkt. 11-1 at 14-30).  The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

A.      **The ALJ's Evaluation of Evidence**

Plaintiff contends that the ALJ neglected to properly consider and explain evidence, opinions, and testimony and account for supported limitations in determining Plaintiff's RFC.  Plaintiff argues that the ALJ's finding the opinions of a reviewing medical consultant, Robert Dickerson, M.D., and consultative examiner, Hongbiao Liu, M.D., "persuasive" and the opinions of Plaintiff's treating advance nurse practitioner, Debra Brown, and treating physician, Ahmed Bayoumi, M.D., only "somewhat persuasive" was not adequately explained.  Plaintiff also argues that objective findings are not required for diagnosis or disability findings and the ALJ erred in relying on the lack of objective findings and the conservative treatment Plaintiff received in reaching his conclusions.  Plaintiff further contends that the ALJ was obligated to recontact his treating providers for clarification.

The Court has reviewed the evidence in the record and the written determination and concludes that the RFC is supported by substantial evidence, and it is clear to the Court how the ALJ concluded that the limitations included in the RFC were necessary, considering the medical opinion evidence and Plaintiff's objective and subjective limitations.

As to the opinion evidence, "[p]reviously, the SSA followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion,

so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Soto v. Comm'r of Soc. Sec.*, No. 19-CV-4631 (PKC), 2020 WL 5820566, at *3 (E.D.N.Y. Sept. 30, 2020) (quoting 20 C.F.R. § 416.927(c)(2)).  However, the regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017).  Because Plaintiff's disability claim was filed on May 25, 2017, the new regulations, codified at 20 C.F.R. § 404.1520c, apply.

Pursuant to the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).  Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section.  *Id*.  Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency.  *Id*. at § 404.1520c(a).  With respect to

"supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1).  With respect to "consistency," the new regulations prove that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record.  *Id.* at § 404.1520c(b).  "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted).  Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).  The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.*  However, when the opinions offered by two or more medical sources about the same issue are "both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ will articulate how he considered

the remaining factors in evaluating the opinions. *Id*. at § 404.1520c(b)(3). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original) (quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

Here, Dr. Dickerson opined that Plaintiff was capable of work at all exertional levels with the environmental restrictions of avoiding concentrated exposure to hazards. (Dkt. 10 at 65-73, 280-82). The ALJ explained that he found Dr. Dickerson's opinion persuasive because "the findings, diagnoses and limitations are supported by the medical evidence of record, wherein the claimant has stable imaging, and no more than conservative treatment, and grossly normal physical findings for his alleged impairments." (Dkt. 10 at 27). Dr. Liu opined that Plaintiff was not limited in an ability to perform routine activities, (*id.* at 265-268), and the ALJ also found this persuasive "because it is supported by the evidence of record, and the no more than mild objective deficits in the record" (*id.*). Finally, the ALJ noted that the opinions of Dr. Dickerson and Dr. Liu were consistent with each other and both doctors were knowledgeable of the disability requirements promulgated by the Social Security Administration. (*Id*).

ANP Brown submitted a "Headaches Medical Source Statement," co-signed by Dr. Bayoumi, on January 29, 2019. (Dkt. 10 at 389-92). The statement indicates that Plaintiff

suffers two headaches per week affecting his vision lasting two to five hours. (Dkt. 10 at 389). ANP Brown and Dr. Bayoumi opined that Plaintiff was incapable of tolerating even "low stress" work and was likely to be off task at work 20 percent of the time. (Dkt. 10 at 390-91). The ALJ concluded that the opinions in the medical source statement were only partially persuasive and provided several reasons for that conclusion. (Dkt. 10 at 27). First, he noted that the administrative record contains no treatment notes signed by Dr. Bayoumi. Second, aside from the "Headaches Medical Source Statement," neither ANP Brown nor Dr. Bayoumi had assessed or diagnosed Plaintiff with a migraine disorder in treatment notes, which unlike the medical source statement, reflect only little reported symptoms relating to migraine headaches. Accordingly, the ALJ found that the report of symptoms and limitations contained in the medical source statement were not supported by the longitudinal evidence in the record or the providers' own treatment notes.

Contrary to Plaintiff's contentions, the ALJ did adequately explain his reasoning for how persuasive he found the medical opinion evidence. As to the state agency examiners, it was appropriate for the ALJ to consider that Plaintiff's condition was stable, with grossly normal physical findings. While Plaintiff is correct that corroborating objective evidence is not necessary to establish the presence of migraine headaches, *Brandy Marie T.A. v. Comm'r of Soc. Sec.*, 2019 WL 2264977, at * 4 (N.D.N.Y. May 28, 2019) ("[M]any, many cases have noted the elusive nature of migraines and have rejected opinions of ALJs that have found migraines not to be severe based upon the lack of objective evidence." (citing cases)), this does not render the lack of objective evidence wholly irrelevant, *see Marozzi v. Berryhill*, 6:17-CV-6864-MAT, 2019 WL 497629, at *5 (W.D.N.Y. Feb. 8, 2019)

(holding that ALJ properly considered lack of objective evidence supporting treating physicians' opinions when weighing those opinions).  And here, the ALJ's assessment of the opinions was not based solely on a lack of objective findings, but rather, he noted that the stable imaging was coupled with conservative treatment.  This is an appropriate consideration.  *See Thomas v. Comm'r of Soc. Sec. Admin.*, No. 19 CIV. 1177 (GWG), 2020 WL 4757059 (S.D.N.Y. Aug. 18, 2020) ("In the context of a medical opinion, courts have found substantial evidence to support an ALJ's decision to discount an opinion where the opinion was not supported by the . . . treatment progress notes[,] which show that the claimant's condition was stable from conservative treatment with medication and therapy." (citation and quotation omitted)); *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("The fact that a patient takes only over-the-counter medicine to alleviate her pain may, however, help to support the Commissioner's conclusion that the claimant is not disabled if that fact is accompanied by other substantial evidence in the record, such as the opinions of other examining physicians and a negative MRI.").  Here, the ALJ noted that while Plaintiff was diagnosed with a benign brain tumor and a venous anomaly, the findings remain stable on imaging and require follow-up only on a two-year basis.  (Dkt. 10 at 25).  No treatment of the condition has been deemed necessary in the absence of growth.  (*See, e.g., id.* at 223-24).  Similarly, the ALJ highlighted that while Plaintiff "reports significant headache symptoms, he does not treat with a specialist for the migraine

headaches, and treatment has been conservative, with only over the counter medication, as needed." (*Id.* at 25).

Finally, it was appropriate for the ALJ to consider the consistency of Dr. Dickerson and Dr. Liu's opinions with each other, and to note their program knowledge of the requirements of disability under Social Security regulations in finding their opinions persuasive. Indeed, as noted above, the new regulations prove that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

As to ANP Brown and Dr. Bayoumi, the ALJ rightly considered the lack of any treatment notes cosigned by Dr. Bayoumi in considering how to assess the opinions. Further, it was wholly appropriate for the ALJ to highlight that the treatment records from these providers provide little support for the opinions contained in the Headache Medical Source Statement. Plaintiff does not identify any treatment notes from ANP Brown or Dr. Baymoumi that would corroborate the limitations contained in the opinions. Instead, he argues that if the ALJ found the treatment notes lacking, he had an objection to re-contact the providers for additional evidence or clarification. The Court disagrees.

"'The duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings'; '[w]here the record before the ALJ is complete enough to form a determination as to plaintiff's disability, the ALJ is not required to recontact a medical source.'" *Shane C. v. Commissioner*, No. 1:20-CV-0895 (DEP), 2021 WL

- 12 -

5906236, at *8 (N.D.N.Y. Dec. 14, 2021) (quoting *Ismet G. v. Saul*, 19-CV-1175, 2021 WL 964209, at *6 (N.D.N.Y. Mar. 15, 2021)).  Here, the ALJ did not reject the opinions of ANP Brown or Dr. Bayoumi for vagueness or contend that the opinions were unclear; rather, he found the opinions unsupported.  Moreover, the lack of treatment notes signed by Dr. Bayoumi is a reflection on the nature of his treating relationship with Plaintiff and cannot be credibly seen as an indication that the ALJ believed that there were missing records.  Accordingly, the record contained sufficient evidence, and the ALJ was under no obligation to recontact Plaintiff's treatment providers or to otherwise further develop the record. *See Varalyn B. v. Commissioner*, No. 5:18-CV-978(ATB), 2019 WL 5853388, at *5 (N.D.N.Y. Nov. 8, 2019) ("Despite the duty to develop the record, remand is not required where the record contains sufficient evidence from which the ALJ can assess the claimant's RFC.").

**B.    Evaluation of Plaintiff's Credibility**

Plaintiff's final argument is that the ALJ's "consistency finding" is unsupported by substantial evidence, and the ALJ erred in assessing the credibility of his subjective complaints.  (Dkt. 11-1 at 27).  Plaintiff raises several issues relating to the ALJ's evaluation of his subjective complaints, including that the ALJ failed to credit Plaintiff's good work history.  For the reasons set forth below, the Court finds no error in the ALJ's credibility assessment.

The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at

*6 (N.D.N.Y. Jan. 15, 2013), *adopted*, 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).

In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" his symptoms. *Id.* (quoting 20 C.F.R. § 404.1529(c)(1)). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id.*

In this case, the ALJ applied the two-step inquiry. At the first step, he found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Dkt. 10 at 25). Accordingly, the ALJ assessed Plaintiff's credibility, and then discussed several reasons why Plaintiff's allegations were not fully credible. First, the ALJ noted that the medical evidence and treatment history were not entirely consistent with the alleged severity of his functional limitations. Second, he noted that Plaintiff does not treat with a specialist or receive treatment in a manner that

would be expected from someone with a debilitating impairment.  Rather, Plaintiff only treated with over-the-counter medication, as needed.  The ALJ also noted that Plaintiff "continues to engage in a wide range of activities, including fishing, hunting and weightlifting, shopping, and household chores."  (*Id.*).

Accordingly, contrary to Plaintiff's implication, the ALJ adequately explained why he found that Plaintiff's subjective complaints were not entirely supported by the record. *See James D. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00720 EAW, 2021 WL 2793667, at *8 (W.D.N.Y. July 6, 2021) ("It was proper for the ALJ to consider . . . Plaintiff's . . .conservative treatment in assessing the credibility of his subjective complaints." (citing *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 646 (S.D.N.Y. 2019) ("While conservative treatment alone is not grounds for an adverse credibility finding . . . the ALJ may take it into account along with other factors."))); *see also Kenneth W. v. Comm'r of Soc. Sec.*, No 1:19-CV-0825, 2020 WL 7385251, at *7 (W.D.N.Y. Dec. 16, 2020) (ALJ properly considered plaintiff's noncompliance with treatment as relevant to the evaluation of his subjective allegations).

Finally, the ALJ's failure to credit Plaintiff's good work history does not require remand.  While "good work history may be deemed probative of credibility," it is "just one of many factors appropriately considered in assessing credibility."  *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (quotations and citations omitted); *see also Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) ("a good work history may be deemed probative of credibility").  However, that Plaintiff's good work history "was not specifically referenced in the ALJ's decision does not undermine the credibility assessment" given

substantial evidence supporting the ALJ's determination.  *Wavercak*, 420 F. App'x at 94. Further, the ALJ plainly was cognizant of Plaintiff's work history, given that he concluded that Plaintiff was unable to perform his past relevant work as a corrections officer as "actually performed," noting that the work "was substantial gainful activity" that "was performed long enough for [Plaintiff] to achieve average performance."  (Dkt. 10 at 28); *see also Motyka v. Colvin*, No. 15-CV-54S, 2016 WL 6067846, at *5 (W.D.N.Y. Oct. 17, 2016) (quotations and citations omitted) ("[A]lthough the ALJ did not discuss Plaintiff's work history in the credibility analysis, he did not ignore it entirely.  To the contrary, the ALJ considered Plaintiff's prior work history when he concluded that Plaintiff's RFC allowed him to continue his career as a police dispatcher, as he had previously performed that job.").

In sum, the Court finds no error in the ALJ's credibility assessment.  The ALJ applied the two-step inquiry and set forth well-supported reasons for finding Plaintiff's subjective allegations less than fully credible.  Plaintiff has not shown that remand on this basis is warranted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: December 16, 2021
        Rochester, New York